Thank you. I represent Jerry with Quinn. Mr. Quinn was convicted of being a felon in possession of a firearm, two firearms actually. He also was convicted of possession with intent to issue in his trial was whether or not the government's witness, Mr. Randy Buffington was credible. The facts very briefly are that law enforcement went out to serve a warrant on Mr. Quinn for a state charge, and I located him in a house of a friend of his, Mr. Buckingham, Randy Buckingham. When law enforcement arrived, the two of them were sitting on the front porch. And when they saw the officers approaching Mr. Buckingham, well, Mr. Quinn took off around the side of the house and Mr. Buckingham ran through the house and picked up two backpacks and ran out the back door where he was caught by law enforcement and their dog. In those two backpacks, in one of them, officers discovered the two firearms that are at issue in the house. Less than an ounce in some baggies. The firearms and the marijuana were found on the top of the backpack. And the backpacks did belong to Mr. Quinn. There's no question about that. They were his. The question is whether or not Mr. Buckingham, when he ran through the house, picked up his guns and marijuana and put them in the backpack, or whether they were in there all along and were there for Mr. Quinn. Now, when law enforcement tested the guns and the marijuana packets for fingerprints and DNA, they were unable to locate any. So, shortly after he was arrested, later that night, which would have actually been the next day, Mr. Buckingham made a statement to the police that the guns and marijuana belonged to Mr. Quinn, that they were not his, not Mr. Buckingham's. So, what it came down to at the trial was whether or not the government could persuade jurors to believe Mr. Buckingham. Mr. Quinn did not testify because he claimed to have amnesia about the events in question. He had previously had two head injuries and had been having memory problems over the years. Those were reported in some documents from his prior incarcerations. Mr. Quinn has a record being... He was injured when he was arrested. Whose dog is that? That would be my dog. I was hoping that he was going to be good, but I think he heard the postman. He'll be okay in just a second. Then, let's see, where was I? Well, let me put you in another train of thought. I'm not telling you how to use your time, but you've taken five minutes giving us the facts, and I suspect you may run out of time if you don't get zinged into your argument part unless you find yourself in rebuttal. So, I suggest, since this is a shift year, go to the argument part, yeah, so you don't run out of time telling us the facts. I will. They are somewhat important because the major issue in this case is that the government, in order to bolster Mr. Buckingham's testimony, introduced a prior consistent statement, the one that he made at the time of his arrest, to argue that his trial testimony was credible. The problem, of course, is that at the time of his arrest, his health was a convicted felon at the time, and so possession of any of these items of contraband would have been extremely problematic for him. After, prior to the trial, he entered into a plea agreement for the state charges to be dropped against him. He had, in the meantime, picked up another charge, which was a possession of marijuana with intent to sell. So, his plea deal was that if he testified in Mr. Quinn's trial, the charges would be dropped. So, what is your argument? Do you argue that the statement, which purported to be a prior consistent statement, was made after the time Buckingham had a motive, you know, to lie or whatever, or chronologically is what was presented to the court, the statement was made before he would have had, you know, a motive to lie? Give him a drift, so to get us there. Okay, well, he had a motive at the time that he was arrested to lay the blame on somebody other than himself, the obvious person being Mr. Quinn, because he had a felony charge and could have been charged with the same, in fact, he was charged with the same things that Mr. Quinn was charged with in regards to the guns and the possession. So, at the time he made the statement, he had a very powerful incentive to lie to get himself out of trouble, and then, of course, after they cut him a video to testify, that would recourse that original motive to lie. So, he very plainly had a motive to lie at the time he made the statement. Can make an argument that he did not, and I have cited some several cases in my brief that are pretty much on point here, saying that the temporal requirement that was established by the United States Supreme Court, that the statement that they're trying to introduce has to be made prior to an incentive to lie, that when you're arrested, and particularly if you're arrested for the same charges or could be charged with the same thing, then you have a motive to lie about it. Now, the government somehow seems to think that the motive did not until the plea deal, but plainly that is wrong and that is contrary to the case law, and the government has not cited any case law to the contrary. Ms. Epps, isn't the issue that he was impeached for having two motives to lie? One, he didn't want to get the felon in possession charge himself, which that motive did exist the day of the arrest, but then he was also attacked for having a motive to lie because of the plea deal he later obtained, and so there his prior statement did predate that motive to get this other case dismissed that was part of the plea bargain. So, the issue is when you have two motives and the prior statement postdates one but predates the other, and so why shouldn't you, if the defense injects this other motive into the case, why shouldn't you be able to rebut it? Because the motives are not really different. The motive is to exculpate himself from, at the time he made that statement, his motive was to exculpate himself from these charges. Now, he later, it's true that he later did pick up another charge, and the plea agreement covered both groups of charges, but that doesn't make the motive different. It's what it, the motive here runs in a straight line, and the cases that I had cited dealt with cases where the witness made a statement at the time of the arrest and later entered into a plea deal, and the statements were deemed to be not admissible. This is not the motive. The fact that there was an additional motive or reason, if you prefer, that he had added that motive to lie about it. Now, that is different from the case that the government cited for what you're talking about, where the witness had made, had written a letter, actually, to somebody who turned out later to be a co-defendant in the case that was at issue, and in that letter, he had implicated the defendant into crime, but the, so when he wrote that letter, he did not have the same motive to lie that he had later on, but here, the motive to lie is the same. Just because he had added an additional reason for him to lie doesn't negate the fact that when he made the statement, it is unreliable because it was made with a motive to exculpate himself. That's not true in the case that is cited by the government. The witness there didn't have, he had not even been charged or the incident had not even occurred that was the issue, that was the crime in that case. That's an entirely different situation, and if it were the case that the plea deal provides a different motive, then those cases that I cited would not have come out the way they did. Does that, was that helpful? Press ahead, you still got time. Have I got some more time? I'm not, for some reason, oh, there's the clock, okay. I was not seeing the clock there. All right, the government also argues this was harmless, but that belies what they actually argued at trial where they claimed it was very important that he had made that statement, and that, and I've put it in the brief, and I don't have time to reiterate it here, but over and over and over again, the government emphasized how important it was that Mr. Buckingham had made that initial statement, and that it showed that he was was, whether or not he was credible, it's, I think we should take the government at its word that that this was an important issue and was therefore not harmless. Now, I don't know that I have, I'd like to, can I save my 30 seconds, my 20 seconds for rebuttal? You can't add it on, you can't tack it on. Go for it now. You'll still, you'll still have your full five minutes, you know, for rebuttal if you want to stop there. Okay, I don't think I have time to start anything else, so I'll just sit here. All right, we appreciate your opening. All right, let's shift to Mr. Mims, hear from the government. Good morning. Your Honor, first I want to address an issue that Ms. Epps stated. She said specifically the government introduced the statement to bolster Randy Buckingham's testimony. I don't really agree with that statement. The statement was introduced to rebut a specific allegation by Quinn's counsel that Buckingham was lying because he got a deal. That's that's why the statement was introduced, and it was proper to let the statement in for a couple of reasons. For one, Buckingham was present. He could have testified on direct examination what the officers told him that night. And secondly, it was also proper under Rule 801 D1 B1. And finally, even if it was error, it was it was harmless error because there was evidence to support the verdict and prior consistent statement did not affect the outcome. So I want to go back to the to the objection to the statement when it was offered on cross examination of Buckingham. Quinn's counsel attacked his credibility, asserting that Buckingham was lying because he was getting a sweetheart to testify against Quinn. Now, in full candor, he also crossed him on his prior felony, saying that Buckingham could not afford to get caught with a gun. As you know, Randy Buckingham had given a statement that night of the events in question that was consistent with his trial testimony on a redirect. We offered that statement, and we had a sidebar where we discuss this issue with the judge and Quinn's counsel objected, and he initially argued that Buckingham was available and therefore was not hearsay, but that it was improper redirect since he did not go into this matter on cross examination. And actually, Quinn's counsel is on the right track. Buckingham, as I said, could have testified about that statement on direct. It really it wasn't hearsay at all, but to offer it on on redirect, the government pointed out three times during the course of the discussion that Quinn's counsel attacked Buckingham's credibility on the grounds of recent fabrication or motive to lie. That is, specifically, Quinn's attorney says Buckingham is lying because he is getting a deal. And in response to that, it's important to note that Quinn's counsel didn't say, well, no, Judge, he really demoted to Rose that night. He had other motives. What Quinn's response was, and I quote, I just said that this is his story and he's getting a deal on it. So specifically, he's raised the specific attack. You're lying because you're getting a deal that opens the under Rule 801 D1 B1 for me to use the statement on redirect. As this court knows, there's four requirements under Rule 801 D1 B for admissibility statement. The only requirement at issue here in this case is the statement must be made prior to the time the witnesses supposed motive to falsify Rose. And there are a couple of cases that I think are key here. One of them is U. S. Versus Wilson, the Fifth Circuit case that I cited in my brief, which says specifically a prior consistent statement need not rebut all motives to fabricate, but only the specific motive alleged at trial. And the other case I think is important is the U. S. Supreme Court case of Tommy versus U. S. That, of course, is the case that initially placed a timeline on the statement, saying the statement must be given prior to the motive to lie. And in that case on page 701 of the of the Supreme Court version of 1 15 Supreme Court at 701 Supreme Court stated specifically statements admitted under Rule 801 D1 B must be made before the alleged motive fabricator rose. They again stated it on page 705 and said that statements were about a charge of improper motive are missed for only when those statements were made before the charge recent fabrication or improper motive. In this case, as stated by Quinn's counsel at trial, the motive lie he was arguing was you're getting a plea deal and therefore you're lying. And when he opens that door, we have the right to use a statement on Rule 801 D1 B1 regardless of any other motives he may have had that may have arisen prior to statement. Let me ask you this, and I'll ask I'll ask counsel opposite about him when she comes back on. But in the sidebar, you sought to introduce it under 801 D1 B. And then the court, you know, pointed to that defense counsel said basically he was objecting because it was beyond the scope of about this credibility issue. And so then, as I understand the proffer again, it's under 801 D1 B. The judge overruled the objection, said this is coming in. Mr. Lucas, you can take it up on appeal. I don't see where defense counsel ever responded to the 801 D1 offer. Instead, the objection seemed to have gone to beyond the scope of redirect and nothing else. And then after that, it went on. Is that the way you appreciate it? That's right. I do not. I'm reading from page 275 of the record where the sidebar starts up. And at the very beginning, I say it's consistent with his testimony. And the rule says I'm citing Rule 801. And then we pulled out a copy of the rule and began reading it. And I read the rule into the record and I said, I'm down page 276. I'm allowed to put this statement into evidence in order to rebut his accusations under Rule 801 D1 B1. No, that's we're saying the same thing. Well, all I'm saying is all I see from defense counsel is an objection based on the statement being beyond the scope of redirect. I don't see where defense counsel addressed the applicability or not of 801 D1 B1. That's what I'm asking. Well, your honor, quite frankly, I believe he didn't get into it because he didn't believe he had an argument under 801 D1 B1. All right. Okay. He raised it. And if he failed to address it with the court, I can only believe that he did it because he thought he would be making an argument that was not a winner. All right. But it certainly was was brought up for him to have a chance because of that. Following up on that, I'm surprised the government's not arguing plain error because this whole issue about the timing of the motive wasn't raised by defense and brought to the attention of the district judge so he could make a determination about this issue. Where was this issue presented to the district court? In other words, I'm sorry, issue of the abysmal ability of the prior statement. You went mute, Judge Cus. All right. Sorry about that. The defense's argument here is that this statement was inadmissible because of the timing requirement of the motive, right? Yes. Where did the defense ever argue that to the district judge? Well, he really he really didn't. Right. So why aren't you arguing plain error? Well, maybe I'm just not smart enough to argue that that issue. I'm comfortable arguing abuse of discretion, but maybe it is plain error. Well, that's the point I was alluding to to try to find out where in here in the transcript the pushback on 801 D1 was. I mean, that's not anyway, whatever. Yeah, just to be honest with you, I just don't believe it was really that big of an issue at trial under 801 D1B. I believe this is really just Monday morning quarterbacking when you have a chance to go back and look at every detail of the record and try to find anything to raise an appeal on. Well, I get it, but as I understand your argument thus far here, though, you are lying on 801 D1B1 on appeal, aren't you? That's what you just said. Yes, sir, I am. Although actually last week as I got to reading this more closely myself, I realized that frankly he could have testified about it on direct. I certainly could have put him on there to testify to what he told the officers that night. Now, he did read the statement into the record on redirect, and that may be a little bit different when he actually reads the statement verbatim, but still, I think it would have been proper to get into it. A lot of times with these statements, when you use rule 801 D1B1, a lot of times you're using the officer who took the statement to testify to it, and that adds that extra layer of hearsay into it, and we didn't do that. In this case, we had Buckingham himself testify about the statement. I think that too makes it different than the normal case that we deal with. I would like to address the issue of harmless error for a moment. Obviously, I don't believe this is error at all, but if the court reaches the issue of it being error, I believe this is clearly harmless error. If you look at the cases cited in both the Quinn's brief and the government's brief, if in cases where the court found a single error under rule 801 D1B1, they found that to be harmless. That would be the Marino case and the Trujillo case. The cases where the error was determined to be harmful and the verdict was reversed, there were multiple errors. That would include the Riddle case and the Forrester case. In fact, it was the Fifth Circuit and Riddle that said the court specifically stated it expressed no view as to whether any one of the errors standing alone would be sufficient to justify reversal. I mean, a harmless analysis all depends on the facts of each particular trial. So, focused on this trial, the problem I see for you, I mean, the jury asked for this statement during deliberations. I mean, that shows it was on their mind. Why would they have asked for it? If it wasn't a major factor in their deliberations, why would they have asked about it? Well, for one thing, I think it's important to note that the statement itself did not come, we did not offer it into evidence. It was not admitted into evidence. So, he read his statement verbatim from the witness stand. I understand that, but my point is the question is what was on the jury's mind. We usually just guess, right, because they come out with the verdict. You don't know what they were thinking. You have to guess, and that's what we do. But here, we have a big because they sent a question saying, can you repeat what that statement was he gave right after the arrest? Yes, sir. I think it's certainly proper for them to consider the statement, and the fact that they did does not mean that it was necessarily the foremost thing in their minds. Again, they're allowed to consider it in rebuttal. Well, the closing also emphasized it heavily. Yes, well, I want to address that issue because the appellant argues that the government went into it over and over again. In truth, in closing argument in the initial in the opening part of closing argument, there's no mention made by the government of the prior consistent statement given by Randy Buckingham. The government only mentioned the prior consistent statement in rebuttal after Quinn's counsel in closing said Buckingham was lying to get a deal. We didn't mention it all in the opening section of closing. When Quinn's counsel did his closing, I'm quoting from page three of 3 59 of the record. Quinn's counsel says and Randy Buckingham set there on the witness stand and said, Man, if they like the testimony I give here, they're going to dismiss all the charges against me. So he had all the motive in the world to lie. It was only after that statement was made by Quinn's counsel in closing. They didn't rebuttal closing. I did get up and say, Well, he's been accused of lying, but he gave this prior consistent statement. And I want to point out that go back to the Tony case for a minute. In Tony, the court noted that in closing argument, the government plays great reliance on the prior statements for substantive purposes, but did not once seek to use them to rebut the impact of the alleged motive. In our case, we have exactly the opposite situation. We don't mention it at all until Quinn's Buckingham's credibility is again attacked in closing, and then we use it only for rebuttal purposes. So I think it's certainly appropriate for the jury to ask a question about it, um, to be considering it for those purposes that it was offered. One other thing I want to go back and get into for a minute while I have the time is that I know you're very familiar with the facts of the case. I won't waste time going back through them. I do want to point out that even without Buckingham's testimony, there are a number of facts here that could be used to prove that the guns belong to Quinn. I mean, I will go through them very briefly. The backpacks that Buckingham is caught with his runs out the back door are full of Quinn's belongings. There's multiple items in the backpack linking the backpacks to Quinn, including DNA on toothbrush and hairbrush, boarding pass, photographs, keys, letters addressed to Quinn, Quinn's birth certificate, reward cards, legal documents of Quinn's and Quinn's phone bill. Also in those backpacks, in one backpack, there are two loaded firearms, one in a brown or yellow envelope, another in a white mailing envelope, an express mail envelope. It's also important to note that in the second backpack was a single round of ammunition that matched one of the firearms. It makes no sense whatsoever to think that in the time it took for Randy Buckingham to race through the house that he gathers up two guns, puts them in separate envelopes, puts them in a backpack, and along with some marijuana, but leaves the marijuana lying on the table in the front room, leaves the marijuana lying in the back bedroom, and then also picks up a random shell cartridge and throws it in a separate backpack. And all this took place in less than 15 seconds. You've heard in the trial, Jamal Thompson, the deputy U.S. marshal who testified, he said four times on pages 165, 167, 188, and 195 of the Randy Buckingham ran in the door and he heard Buckingham screaming in the backyard when he was apprehended. It just doesn't make good sense that Buckingham somehow went through the house and gathered up this contraband and put it in a backpack to run outside with it, and yet that's what Quinn wants you to believe. There was plenty of evidence to believe that the guns belonged to Buckingham with or without Buckingham's statement. That also, I believe, goes to the harmless error issue. So which standard are you leaning on? Plain error, abusive discretion, harmless error, all of the above? All of the above, your honor. I cited certainly abusive discretion in my brief, but I certainly would not reject a plain error analysis. Your honor, I'm certainly happy to answer any further questions the court may have on any of these issues, but if there are no other questions, I don't think it does me a lot of good to sit here and state my brief to you, and I'll see the rest of you. All right. Well, it's always extremely helpful to the panel when we have the trial lawyer arguing on appeals so we can ask exactly what if we have to. So at least you were there, so, you know, we can get the good information. All right. We're good. If you're okay with where you are, we'll shift back to Ms. Hepps for rebuttal. Am I back on? Yes, ma'am. Okay. I want to discuss this plain error issue here. The government in its brief did not argue plain error because it concedes that he did make a hearsay objection. Well, he made a hearsay objection, but I'm reading the transcript. I'm looking at 275 and 276. I'm looking at the bench conference, and counsel objects because it's beyond the scope of redirect. Counsel argues 801 D1 B1. Counsel doesn't say anything about that. The judge says, well, I think 801 D1 B1 applies. I'm going to let it in. Counsel, you can take it on appeal. Counsel says, very well, Your Honor, and pushes on. So I'm looking at the transcript pages. So he doesn't assert an objection there. Now, if you're arguing that, his objection as a whole to the admissibility of the statement cures it all, I hear that. Well, that's what I'm arguing, and I think the government more or less conceded that in their brief that when Mr. Lucas said it was not hearsay, that he meant to say it was hearsay, and the judge, they correctly, everybody correctly identified the rule that was at issue, and the rule that is at issue has the temporal requirement that the statement be made before a motive to falsify arose. Now, the- Well, let me ask you this. Come back to the question Judge Costa asked you. Assuming we've got these two focuses of when there was a motive, et cetera, and as Judge Costa asked you, you know, clearly in one instance, the deal occurs after and so forth. So in other words, you've cited a lot of stuff in your brief. So what's your best case that would obviate the panel holding that there's no error here because when one of the proffers made there wasn't, the motive wasn't there? What's your best case? Well, I think there are probably about three of them. There's Moreno, there's Forrester, and there's, I think it's Trujillo. All of those were cases where the defendant was, where the witness rather was arrested for the same crime and subsequently entered into a plea deal. And the courts did not allow those to be in. Now, let me say that here's the problem. Hearsay is by definition unreliable. And so in order to make it reliable, there has to be some showing that in this particular instance, that the statement that was made, that there was no incentive for him to falsify that statement. And there simply was. It was the hope that he would get charges dropped. He subsequently entered into a plea deal that justified his hope that he would get the charges dropped. The fact that there were other charges that he also got dropped does not mean that he did not have the same motive to falsify that statement at the time that he made it. And what it comes down to here is not a parsing of the time when motives arose where it's the same motive. The motive is to get himself out of charges. And in particular, these charges. So the fact that he also picked up another bunch of charges before he testified at trial doesn't make this initial statement reliable. And that's what the test should be. And the one test that the government cited that supports this difference in letter years before the crime that was being tried even arose where he could not possibly have had a motive to get out of those charges because they hadn't even happened. And so the court there that statement, that hearsay statement to be sufficiently reliable because of the lack of a temporal relationship to the motive at issue to deem that it was admissible. All right. You're out of time, Ms. Epps, but give us a concluding sentence. Well, I'm going to say it again. The statement is hearsay, and it's not any less hearsay. If he had made it on direct, it still would have been hearsay. It still would have been a statement made out of court to somebody that was not subject to cross-examination. It's an unreliable statement and it is lying if the jury relied on it. All right. All right. Thank you. Ms. Epps, you are court-appointed, and this panel as well as our court as a whole appreciates the court-appointed attorneys that we have who take these cases, brief them, and as in this case, present oral argument on behalf of your client, especially so in this COVID environment. We particularly grateful for you and others that present the cases to us very professionally, so we thank you for your service. Out of curiosity, where are you geographically situated? I am geographically situated in Canton, Mississippi. Okay. All right. Mr. Mims, where are you? I'm sitting in my office in Oxford, Mississippi, Your Honor. All right. We got Mississippi covered today. All right. Thanks to both of you. The case will be submitted and we'll get it decided.